Pabón Chameco, Jueza Ponente
*1000 TEXTO COMPLETO DE LA SENTENCIA
Comparecen ante nos, mediante recurso de apelación, Miguel Angel Suárez González y Oscar Suárez González, en adelante, los apelantes, solicitando la revocación de una Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Aibonito.
Mediante dicho dictamen, el tribunal a quo declaró Con Lugar la demanda interpuesta por Elba Suárez González, en adelante, la apelada.
Por las razones que expondremos a continuación y luego de evaluar detenida y cuidadosamente la comparecencia de las partes y los documentos y escritos que obran en el expediente, confirmamos la Sentencia apelada en cuanto a la validez de la Escritura de Donación y devolvemos el caso al Tribunal de Primera Instancia para que dilucide en sus méritos los demás asuntos planteados en el recurso.
I
Conforme surge del recurso ante nuestra consideración, el 13 de octubre de 1998, la apelada interpuso demanda sobre acción civil contra los apelantes. Surge de dicho escrito que la apelada alegaba ser dueña en común pro-indiviso de un bien inmueble sito én Aibonito, Puerto Rico. Adujo que los derechos sobre dicho inmueble surgían de conformidad a la Escritura Núm. Once de Donación, otorgada ante el Notario Elvin Hernández Dueño el 4 de abril de 1992. A tales efectos, planteó que los apelantes le debían dinero por concepto de cánones de arrendamiento de rentas devengadas sobre el mencionado predio de terreno.
Presentada la contestación a la demanda, los apelantes negaron las alegaciones de la demanda y, entre otros extremos, plantearon ingratitud por parte de la apelada, así como que el apelante, Miguel Angel Suárez González, estaba impedido como donante de disponer bienes futuros que aún no le habían sido adjudicados.
Trabada la controversia y luego de los trámites procesales de rigor, el tribunal a quo dictó el 24 de junio de 1999, una Resolución. A tales efectos, ordenó a las partes del caso de autos sometieran memorandos de derecho “limitados únicamente a si es válida la donación alegadamente efectuada por la parte demandante a la parte demandada en virtud de la Escritura Núm. 11, otorgada el 4 de abril de 1992, ante el Notario, Don Alvin Hernández Durán, cuando, posteriormente, las mismas partes comparecen en la Escritura Núm. 51, otorgada el 22 de marzo de 1994, ante el Notario José B. Aponte Colón y adjudicaron el mismo bien inmueble que es objeto de controversia “.
Sometidos los escritos, el Tribunal de Primera Instancia emitió Sentencia el 8 de octubre de 2001, notificada el 10 de octubre de 2001. Mediante dicho dictamen, declaró Con Lugar la demanda interpuesta, condenando a los apelantes, Miguel Angel y Oscar Suárez González, a satisfacer solidariamente a la apelada la suma de $13,663.66, correspondientes al arriendo del inmueble sobre el cual determinó el foro de instancia, ésta adquirió un 33.33% mediante donación de Miguel Angel Suárez González. Asimismo, ordenó al donante a cumplimentar la Planilla de Contribución sobre Donaciones, y tramitarla al Departamento de Hacienda. A su vez, ordenó al Registrador de la Sección de Barranquitas del Registrador de la Propiedad de Puerto Rico, que anulara la inscripción realizada a favor del donante, en relación al inmueble en controversia, inscrito en el Folio 138 del Tomo 225 de Aibonito, Finca Número 12,017, en cuanto al 33.33% que figura registrado a favor de éste.
Inconforme con dicha determinación, los apelantes, Miguel Angel y Oscar Suárez González, acuden a esta Curia el 1 de noviembre de 2001. Habiendo comparecido la apelada, procedemos a resolver.
II
En su recurso, los apelantes plantean que incidió el Tribunal de Primera Instancia al declarar válida la Escritura Núm. 11 otorgada el 4 de abril de 1992; al determinar que la adjudicación que del inmueble se hace al apelante, Luis Miguel Suárez González (donante), mediante la Escritura Núm. 51 de 22 de marzo de 1994 era nula; al dictaminar que no hubo una revocación de la donación cuando las partes suscribieron la antedicha *1001 escritura Número 51; al declarar con lugar la demanda en todos sus extremos y al no desestimar la demanda incoada en cuanto al apelante Oscar Suárez González.
III
La donación es un acto de liberalidad por el cual una persona dispone gratuitamente de una cosa a favor de otra que la acepta. Art. 558 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 1981.
Al respecto, se expresa el Profesor Vélez Torres, haciendo acopio de las expresiones de Castán:
“[l]as donaciones aparecen reglamentadas en la parte del Código dedicada o relativa a los modos de adquirir la propiedad, siguiendo, obviamente, el plan del Derecho romano que las consideró como “otro género de adquisición de la propiedad”. Pero, a pesar de la ubicación en el Código de la reglamentación de esta figura, y a pesar, además, de que el artículo 558, 31 L.P.R.A. 1981, en ocasión de definirla, se refiere a la misma como un acto, la doctrina es unánime en considerarla como un contrato más de los reglamentados por el Código. ” [Cita omitida.]
Al presente, el concepto donación representa un modo especial de adquirir la propiedad y dominio de bienes muebles e inmuebles. Conforme el Art. 558, supra, la donación es un acto de liberalidad {animus donandi) mediante el cual una persona (donante) gratuitamente dispone de una cosa al sustraerla de su patrimonio y pasarla a otra quien la acepta (donatario). Supone un empobrecimiento del donante sin que medie una contraprestación y puede comprender no sólo cosas tangibles, sino derechos. (Cita omitida) Lage v. Central Fed. Savings, 108 D.P.R. 72 (1978).
Vale aclarar en este momento que, a diferencia de lo que ocurre con la compraventa, en la donación es innecesaria la tradición como requisito previo a la consumación del contrato, pues, conforme la anterior definición, el donante no se obliga a entregar o a disponer de una cosa, como ocurre en la compraventa, sino que simplemente dispone de la cosa, sin más. Por lo tanto, basta el consentimiento de las partes, resultante de una oferta de donación, y de una aceptación subsiguiente. Sobre el particular se''expresa Diez Picazo: 
"La donación es un negocio de disposición que efectúa directa e inmediatamente un desplazamiento patrimonial, y no un negocio de obligación del que surgiría para el donatario un derecho a exigir del donante el cumplimiento de. la obligación de entrega a fin de adquirir la propiedad de lo donado." (Enfasis suplido)
Aunque el Código Civil de Puerto Rico reconoce que las donaciones pueden hacerse entre vivos o por causa de muerte (Art. 559; 31 L.P.R.A. see. 1982), siguiendo el enfoque español, prescinde del carácter distintivo de las donaciones mortis causa al preceptuar que las mismas siguen las reglas de la sucesión testamentaria; a saber, estas últimas están refundidas y deben entenderse como legados, ya que producen sus efectos por muerte del donante. Por su parte, las donaciones inter vivos las regula consignando que “se regirán por las disposiciones generales de los contratos y obligaciones en todo lo que no se halle determinado en esta parte”. (Cita omitida). Lage v. Central Fed. Savings, supra.
Sobre el particular, en Lage v. Central Fed. Savings, supra, el Tribunal Supremo de Puerto Rico, haciendo acopio de las expresiones de Castán:
"De acuerdo con esta misma idea, la jurisprudencia admite que en la donación inter vivos puede quedar aplazada la entrega de la cosa hasta la muerte del donante (donación inter vivos post mortem) y asimilando la doctrina del Código Civil a la de nuestro antiguo Derecho, pone la nota diferencial entre ambas especies de donación en que, según dice la sentencia de 28 de enero de 1898, la donación mortis causa se hace por causa de muerte o de peligro mortal, sin intención de perder el donante la cosa ni su libre disposición en caso de vivir, al igual que sucede con las disposiciones testamentarias, mientras que las donaciones inter vivos son las que se hacen sin esta consideración, por pura bondad del donante y merecimiento del que recibe, aunque la cosa no se entregue de momento o se reserve la entrega post mortem, lo cual constituye una simple modalidad que no *1002 cambia la naturaleza del acto, siendo estas donaciones irrevocables.” (Citas omitidas)
A las págs. 83 y 84.
A tales efectos, la característica medular que diferencia la donación inter vivos y la mortis causa, a saber, la “irrevocabilidad” del acto, significando ello que no puede quedar sin efecto por la sola voluntad del donante. Id.
El donante puede revocar o reducir una donación, como acto unilateral, únicamente en los casos comprendidos por ley. Entiéndase, en los casos de supervivencia de hijos, según dispone el Art. 586 del Código Civil de Puerto Rico y en los supuestos de ingratitud comprendidos en el Art. 590 del Código Civil de Puerto Rico. 
El carácter irrevocable de una donación inter vivos -en contraposición con una mortis causa-, hay que confrontarlo también a las limitaciones dispuestas en los Arts. 577 y 581 del Código Civil de Puerto Rico. La primera limitación se refiere a la prohibición de donar bienes futuros, y la segunda, la facultad de reservarse el donante el poder disponer de algunos de los bienes donados o alguna cantidad con cargo a ellos. Lage v. Central Fed. Savings, supra.
Por otro lado, tienen capacidad para donar aquéllos que pueden contratar y disponer de sus bienes. En el caso de autos, tratándose de la donación de una participación hereditaria, es meritoria la discusión de la capacidad del donante para hacer la referida donación.
Como regla general, al morir una persona, los derechos y obligaciones de ésta se trasmiten a sus herederos. Art. 599 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 2081. El conjunto de bienes, derechos y obligaciones que no se extinguen con la muerte del causante, se conoce como herencia. Art. 608 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 2090. Si hay más de un llamamiento a la universalidad de la herencia, entonces surge lo que conocemos como comunidad hereditaria. Cintrón Vélez v. Cintrón De Jesús, 120 D.P.R. 39 (1987).
Sobre la naturaleza de la comunidad hereditaria, en Soc. de Gananciales v. Registrador, 151 D.P.R._ (2000), 2000 J.T.S. 101, el Tribunal Supremo expresó, que [e]l Código Civil no resuelve la cuestión “de si el derecho de los coherederos recae globalmente sobre la herencia (derecho hereditario en abstracto) o si implica una participación o cuota sobre cada objeto o relación jurídica que la integran”. [Cita Omitida]
En Kogan v. Registrador, el Tribunal Supremo expresó que “la comunidad hereditaria recae sobre la herencia considerada como una universitas iuris”. (Bastardillas en el original). Es decir, que el objeto de la comunidad hereditaria es la herencia como un todo y no cada bien, derecho u obligación en particular. Por lo cual, lo que cada coheredero obtiene es un derecho sobre la herencia, no sobre los bienes concretos. “Los interesados tienen sobre el patrimonio del causante la titularidad de una cuota en abstracto, pero no sobre bienes en particular. ” De acuerdo a la doctrina española, este derecho se conoce como derecho hereditario in abstracto. [Cita Omitida],
El derecho hereditario in abstracto implica que mientras no se efectúe la partición, ningún coheredero puede reclamar un derecho específico sobre algún bien, sino “un derecho en el complejo hereditario”. Kogan v. Registrador, supra, a la pág. 652; Cintrón Vélez v. Cintrón De Jesús, supra; Burgos v. Registrador, 54 D.P.R. 37, 40 (1938); Esteves v. Del Río et al, 7 D.P.R. 280 (1904). Al aceptar la herencia, “cada heredero adquiere un derecho independiente sobre la herencia...y la cuota que en ella le corresponda ingresa inmediatamente en su patrimonio como un valor autónomo e independiente que sólo a él pertenece y del que, por tanto, puede disponer con entera libertad”. En otras palabras, cada coheredero puede enajenar su cuota abstracta o participación en el derecho hereditario. [Enfasis Suplido]
En virtud de lo expuesto, un heredero puede disponer a titulo gratuito de su participación en el caudal *1003 hereditario de su causante. Lo mismo debe constar en escritura pública, en virtud de lo dispuesto en el Art. 1232 del Código Civil de Puerto Rico, sobre la cesión, repudiación y renuncia de derechos hereditarios.
Es meritorio señalar que la donación se perfecciona desde que el donante conoce la aceptación del donatario. Art. 565 del Código Civil, 31 L.P.R.A. see. 1988; González Muñiz, Ex parte, 128 D.P.R. 565 (1991).
Por tanto, en el caso de una donación de cuotas o participación de derechos hereditarios, para que la misma se entienda perfeccionada, se necesita la concurrencia de tres (3) requisitos, a saber, el ofrecimiento o acto de liberalidad del donante, la aceptación del donatario y el conocimiento del donante de que la donación fue aceptada por el donatario, mediante documento público. De cumplirse los anteriores requisitos, ocurre un directo e inmediato desplazamiento patrimonial del bien objeto de la donación.
Conforme hemos reseñado anteriormente, dicho acto es irrevocable en el caso de las donaciones inter vivos, salvo lo dispuesto en el Código Civil referente a la revocabilidad y reducción de las donaciones.
Por otro lado, la cotitularidad sobre un patrimonio relicto conocida como “comunidad hereditaria” termina con la partición de la herencia. Mediante este acto jurídico, los herederos -quienes hasta este momento son únicamente titulares de una cuota abstracta sobre la totalidad del caudal hereditario-, convierten sus participaciones indivisas en la herencia en bienes determinados o cuotas sobre bienes determinados. Sucn. Sepúlveda Barreto v. Registrador, 125 D.P.R. 401 (1990).
El ordenamiento jurídico establece varias formas de partición. Así, tenemos la practicada por el propio testador, la verificada por comisario o contador partidor, la efectuada por los propios herederos y la partición judicial. Arts. 1009-1012 del Código Civil, 31 L.P.R.A. sees. 2875-2878.
Respecto a la partición practicada por los herederos por sí mismos, dispone el Art. 1011 del Código Civil, 31 L.P.R.A. 2877, que:
" Cuando el testador no hubiese hecho la partición, ni encomendado a otro esta facultad, si los herederos fueren mayores y tuvieren la libre administración de sus bienes, podrán distribuir la herencia de la manera que tengan por conveniente."
La partición hecha por acuerdo unánime de los interesados, es un contrato. M. Albaladejo, Curso de Derecho Civil, Barcelona, Ed. Bosch, 1982, T. 5, pág. 156. Cómo pacto entre los coherederos, el Código Civil permite la distribución “de la manera que tengan por conveniente”... Si todos los herederos son mayores y capaces, pueden verificar la partición en la forma que tengan por conveniente sin necesidad de ajustarse al testamento ni cumplir con las disposiciones del Código Civil que imponen el principio de igualdad cualitativa en la partición, es decir, formación de lotes de bienes de igual naturaleza o calidad. En cambio, cuando haya menores o incapaces, sólo cabe partir simplemente, o sea, hacer cesar la indivisión ajustándose a las reglas del testamento y la ley. [Citas Omitidas] Sucn. Sepúlveda Barreto v. Registrador, supra.
Cuando se trata de una partición de herederos plenamente capaces, señala el Tribunal Supremo, adoptando las expresiones de Albaladejo, que:

"Pueden (los herederos) acordar lo que les plazca, aun sin atenerse ni a las reglas sobre la forma de hacer el reparto, ni al testamento, o a las porciones que les toquen en la sucesión intestada, y manejando, como manejan, sus propios intereses, pueden hasta mezclar con partición, otorgándolo todo en un mismo acto querido globalmente, asuntos ajenos a aquélla.

Como por ejemplo, renuncia a derechos (así uno de los coherederos se desprende de algo a favor de los otros); o concesión de ciertos bienes particulares de un heredero a los otros, a cambio de que éstos se avengan *1004 a distribuir de determinada forma los del difunto; o transacción en un asunto distinto del hereditario, pero pendiente entre ellos, a base de ceder todo o parte de lo que le correspondería en una partición estricta. ” (Enfasis Nuestro)
Sucn. Sepúlveda Barreto v. Registrador, supra.
Añade el Tribunal Supremo que no existe razón alguna para negarle a los herederos plena soberanía en la distribución de los bienes relictos, siempre que los acuerdos no contravengan la ley, la moral o el orden público. Concluyendo que [s]i se satisfacen los requisitos de los contratos pluripersonales, “los partícipes quedan vinculados por la nueva situación jurídica, extinguiendo en esa forma las relaciones anteriores”. Enfasis Suplido. Id.
IV
Con este trasfondo fáctico y normativo, analicemos la controversia de autos, la cual gira en tomo al efecto que tuvo la Escritura de Partición de los caudales hereditarios de las sucesiones de Miguel Angel Suárez González y Antonia González González. Esto a la luz de una Escritura de Donación previa en donde uno de los herederos donó a otro su participación en una de las referidas Sucesiones.
A tales efectos, discutiremos en conjunto los primeros tres (3) señalamientos de error planteados por los apelantes y un trasfondo de los hechos que dieron génesis a la presente controversia.
Antonia González González, progenitora de ambas partes, falleció el 22 de noviembre de 1971 intestada. Mediante resolución emitida por el Tribunal Superior de Puerto Rico, Sala de Guayama, fueron declarados herederos de ésta, sus diez (10) hijos todos de apellido Suárez González y cuatro (4) nietos por premoriencia de uno de los hijos de la causante.
Posteriormente, en el 1977, falleció Miguel Angel Suárez González, esposo de la causante y padre de las partes del pleito de marras, sin otorgar testamento. Fueron declarados herederos de éste sus diecisiete (17) hijos y aquellos nietos que heredarían en representación de los anteriores.
Uno de los apelantes del caso de autos, Miguel Angel Suárez González, transfirió por medio de donación su participación hereditaria en la Sucesión de Miguel Angel Suárez González a la apelada mediante la Escritura Núm. Once (11) otorgada el 4 de abril de 1992, ante el notario Ledo. Elvin Hernández Durán. La participación del donante se identificó en la Escritura de Donación como equivalente a una decimoséptima (1/17) parte del caudal hereditario de la Sucesión de Miguel Angel Suárez González.
Así las cosas, el día 22 de marzo de 1994, ambas partes comparecieron al otorgamiento de la Escritura Número Cincuenta y Uno (51) ante el notario, Ledo. José Bolivar Aponte Colón, intitulada Rectificación de Cabida, Segregación, Valorización de Usufructo Viudal y Partición de Herencia, en adelante, Escritura de Partición. Entre otros extremos, se realizó mediante el referido documento, el inventario, avalúo y partición de los caudales relictos de las Sucesiones de Antonia González González y Miguel Angel Suárez González.
Cabe puntualizar, en esta etapa, que en dicha escritura se adjudicó el interés hereditario de las partes en las herencias dejadas por sus causahabientes considerando el caudal hereditario de ambas sucesiones como una sola masa hereditaria. A tales efectos, se dividió el caudal en diez (10) partes iguales. En consecuencia, el haber individual de cada interesado en la herencia de Miguel Angel Suárez González y Antonia González González, era de quince mil once dólares con cuarenta centavos ($15,011,40).
En lo pertinente, a Miguel Angel Suárez González (donante) le fue adjudicado, en pago a su haber en ambas sucesiones, una participación indivisa de un treinta y tres punto treinta y tres por ciento (33.33%) del solar número uno (1) según descrito en la Escritura de Partición y la cantidad de cinco mil trescientos treinta y tres *1005 dólares con treinta y tres centavos ($5,678.07). Nótese que no existe constancia de lo que fue adjudicado a Miguel Angel Suárez González (donante) en virtud de su participación en las respectivas sucesiones por separado.
Así las cosas, el inmueble que fuera objeto de adjudicación indivisa a los apelantes conjuntamente con su hermano Rafael Suárez González, fue objeto de arriendo al municipio de Aibonito. Dicho arrendador satisfacía la suma de mil dolares ($1,000) mensuales, siéndole remitida a la apelada la cantidad de trescientos treinta y tres dólares con veinticinco centavos ($333.25) mensuales. Obsérvese que esta era la suma que le correspondía al apelante, Miguel Angel Suárez González (donante), en virtud de la Escritura de Partición.
Sin embargo, a partir de mayo de 1998, el apelante Oscar Suárez González suspendió las remesas que le realizaba a la apelada, por instrucciones de Miguel Angel Suárez González (donante), dando origen a la demanda incoada.
Expuesto lo anterior, la controversia de autos requiere que comencemos determinando la validez de la donación. Los apelantes plantean que la donación no es válida, ya que la misma tenía como objeto un bien que no era parte del patrimonio de Miguel Angel Suárez González (donante), toda vez que, al momento de la donación, éste no había aceptado la herencia de la Sucesión de Miguel Angel Suárez.
Sobre el particular, bástenos señalar que lo mismo carece de méritos. Conforme surge de la Escritura de Donación, el bien donado por el apelante Miguel Angel Suárez González (donante) fue su participación en la Sucesión de Miguel Angel Suárez González y no el inmueble en controversia. Con la muerte de Miguel Angel Suárez González, causante del apelante Miguel Angel Suárez González (donante), este último adquirió un derecho a la herencia del primero. Art. 610 del Código Civil de Puerto Rico, 31 L.P.R.A. sees. 2092. Al este disponer de su participación en la herencia de su causante a través de la Escritura de Donación, aceptó tácitamente la herencia y dispuso de su participación en la misma. Véase, Art. 953 del Código Civil, 31 L.P.R.A. see. 2781, Rivera Rivera v. Monge Rivera, 117 D.P.R. 464 (1986). Como reseñamos en la parte III de esta Sentencia, la donación en controversia sólo requería para su validez la concurrencia de tres (3) requisitos. A saber: (i) el ofrecimiento del donante, (ii) la aceptación del donatario, y (iii) el conocimiento del donante de la aceptación del donatario. Surge de manera meridiana que los requisitos antes reseñados se cumplieron al otorgar la Escritura de Donación. En la Escritura de Donación se hizo constar el animus donandi del apelante Miguel Angel Suárez González (donante), mediante el ofrecimiento de éste de su participación hereditaria en la Sucesión Miguel Angel Suárez González a la apelada. Se une, al mismo, la aceptación de la donataria en la misma escritura de donación. En estas circunstancias, la donación quedó propiamente perfeccionada con el otorgamiento de la Escritura de Donación.
Surge diáfanamente la intención del apelante Miguel Angel Suárez González (donante) de transferir a título gratuito su participación en la sucesión de Miguel Angel Suárez González a la cual se suma la aceptación de la donataria en el mismo documento. Por lo que, en ausencia de fraude, dolo o cualquier otro vicio en el consentimiento prestado por los otorgantes de dicha escritura, la misma es válida. Nótese que nada se nos plantea sobre la existencia de algún vicio que invalide el documento.
Sin embargo, esta conclusión no dispone de la controversia. Es necesario determinar cual fue el efecto de la donación en el caso de autos.
Con el otorgamiento de la Escritura de Donación, la apelada advino titular de la participación del apelante Miguel Angel Suárez González (donante) en la sucesión de su causante Miguel Angel Suárez González. Recordemos que la donación no crea una obligación de entregar, sino un desplazamiento en el patrimonio del donante al patrimonio del donado. Perfeccionada la donación conforme a derecho, la misma sólo puede ser revocada, como acto unilateral del donante, en los casos expresamente dispuestos en el Código Civil. Véase, Arts. 586-594 del Código Civil de Puerto Rico, 31 L.P.R.A. sees. 2041-2049. De los autos, no surge que ninguno de los *1006 supuestos allí comprendidos son aplicables al caso de marras.
El bien donado a la apelada, en virtud de la Escritura de Donación, fue la participación hereditaria del apelante Miguel Angel Suárez González (donante) en la sucesión de su difunto padre, Miguel Angel Suárez González. Por tanto, la apelada adquirió un interés en abstracto sobre los bienes que comprendían dicha Sucesión de la cual ella era parte con anterioridad a la donación, por el parentesco existente entre las partes. En consecuencia, la donación acrecentó su interés hereditario en la sucesión de una fracción de una en diecisiete partes (1/17) a dos parte de la misma fracción (2/17) en el caudal.
Posteriormente, los herederos que concurrían en ambas sucesiones suscribieron una Escritura de Partición, luego de haber transigido los haberes hereditarios de seis (6) de los herederos forzosos de la Sucesión de Miguel Angel Suárez González que no eran parte de la Sucesión de Antonia González González. En dicha Escritura de Partición, los comparecientes hicieron constar su voluntad de partir o distribuir los bienes relictos y los adquiridos por ambas sucesiones luego del fallecimiento de sus causantes. Es menester señalar que los bienes que fueron objeto de inventario y avalúo pertenecían a ambas sucesiones en comunidad. Así las cosas, los comparecientes, entre los que se encuentran las partes en litigio, transformaron sus intereses hereditarios en abstracto sobre todos los bienes que comprendían ambas sucesiones en derechos sobre uno o más bienes en específico. En lo pertinente, los herederos acordaron, luego de haber determinado el haber individual de cada uno de los herederos e interesados en la herencia, que al apelante le correspondería el treinta y tres punto treinta y tres por ciento (33.33%) del inmueble en controversia y cinco mil seiscientos setenta dólares con siete centavos ($5,678.07) en representación de sus haberes hereditarios en ambas sucesiones.
Sin embargo, la apelada reclama tener un derecho propietario sobre el inmueble adjudicado al apelante, Miguel Angel Suárez González (donante), en virtud de su participación hereditaria en las Sucesiones de Miguel Angel Suárez González y Antonia González González. La adjudicación de dichas Sucesiones la hicieron los herederos de las mismas sin hacer distinción entre ambos caudales a la hora de inventariar, valorar y distribuir los mismos. A tales efectos, resulta incorrecta la determinación del tribunal a quo que otorgó a la apelada la titularidad del inmueble, en virtud de la Escritura de Donación que sólo otorgaba a la misma la titularidad de la participación hereditaria del apelante Miguel Angel Suárez Rodríguez (donante) en la Sucesión de Miguel Angel Suárez González. Esta participación es equivalente a una décimo séptima (1/17) parte del caudal hereditario del causante. En consecuencia, también resulta ser incorrecta en derecho la determinación del tribunal de instancia que condenó a los apelantes al pago de trece mil seiscientos sesenta y tres dólares con sesenta y seis centavos ($13,663.66), toda vez que la donación en este caso no es título que conceda a la apelante derecho propietario sobre el inmueble del apelante en la forma en que el tribunal a quo lo dictaminó.
Respecto al efecto que tuvo la Escritura de Partición sobre la donación previamente efectuada, deseamos indicar que este Tribunal no está en posición de expresarse sobre este asunto. Aquí se trata de una Escritura de Partición en donde las partes tienen plena libertad de distribuirse los bienes sin estar limitados por las disposiciones del Código Civil. A tales efectos, los herederos pueden acordar lo que entiendan, aun sin atenerse ni a las reglas sobre la forma de hacer el reparto, o a las porciones que les toquen en la sucesión intestada, y manejando sus propios intereses pueden hasta mezclar con partición, otorgándolo todo en un mismo acto querido globalmente, asuntos ajenos a aquélla. Como renuncia a derechos, así uno de los coherederos se puede desprender de un derecho o bien a favor de otros herederos. Los comparecientes en una Escritura de Partición, pueden crear y crean una nueva situación jurídica, extinguiendo en esa forma las relaciones anteriores. 
Por no haberse celebrado vista evidenciaría ni determinación de hechos referente a este asunto en el foro de instancia, esta Curia se ve imposibilitada de hacer una determinación sobre si las partes tomaron o no en consideración la donación al momento de suscribirse la Escritura de Partición. De haberla tomado en consideración, la donación del apelante estaría comprendida en los bienes que se le adjudicaron a la apelada en la Escritura de Partición. De no haber sido considerada la donación, le corresponde determinar al tribunal a quo una *1007 cantidad representativa de la participación donada equivalente a una fracción de diecisiete del caudal relicto de Don Miguel Angel Suárez González.
En relación al señalamiento de error invocado por los apelantes donde se nos señala que incidió el tribunal a quo al no desestimar la demanda incoada en cuanto al apelante Oscar Suárez González, estamos en la misma posición. Ante la ausencia de una vista, este Tribunal no está en posición de llegar a una determinación al respecto. Igual señalamiento hacemos en relación a los demás extremos resueltos por el Tribunal de Primera Instancia. Véase, pág. 3 de esta Sentencia.
V
Por los fundamentos antes esbozados, se confirma la Sentencia emitida en cuanto a la validez de la Escritura de Donación y se devuelve el caso al Tribunal de Primera Instancia para que dilucide en los méritos los demás asuntos planteados, de forma compatible con lo aquí resuelto.
El Juez Aponte Jiménez concurre con el resultado.
Así lo acordó y manda el Tribunal y lo certifica la señora Secretaria General.
Aida I. Oquendo Graulau
Secretaria General
ESCOLIOS 2002 DTA 56
1. Vélez Torres, José R., Curso de Derecho Civil, Tomo IV, Vol. II, San Juan, 1990, pág. 221.
2. Vélez Torres, José R., Curso de Derecho Civil, Tomo IV, Vol. II, San Juan, 1990, pág. 221.
3. Sistema de Derecho Civil, Tomo II, 1983, pág. 383.
4. 31 L.P.R.A. see. 2041.
5. 31 L.P.R.A. see. 2045.
6. 31 L.P.R.A. secs. 2022 y 2026.
7. Art. 566 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 2001.
8. 125 D.P.R. 636 (1990).
9. Soc. de Gananciales v. Registrador, supra.
10. Id.
11. 31 L.P.R.A. see. 3453.
12. Escritura Número 51, Rectificación de Cabida, Segregación, Valorización de Usufructo Viudal y Partición de Herencia, otorgada el 22 de marzo de 1994, ante el notario Ledo. José Bolivar Aponte.
13. Caso Civil 74-837.
14. Caso Civil 11-82-1302.
*1008 15. Sucn. Sepúlveda Barreto v. Registrador, supra.